Good morning. I'm Linda Booker for Mark Chin. The state court findings in this case that the prosecution rebutted the prima facie case for discrimination in the selection of the grand jury foreperson was unreasonable, and there are three factors which lead to that The state court based its decision solely on the testimony of the court executive, Mr. Tammany, and the assisting district attorney, Mr. Coleman. But the evidence showed that those individuals didn't meet with the selecting judge for each selection. Mr. Coleman testified that he would go into chambers on occasion when he was invited. He stated, quote, my involvement, if any, was specific, was, excuse me, was sporadic and minimal. That's the district attorney. This was the district attorney. What about the other gentleman? The other gentleman didn't testify whether he went in to discuss the selection with the judge each time. You point out what he didn't testify to. It seems to me that he testified to a pretty The only other alternative is to pull in all the judges, and it seems to me that because the judges primarily were involved in only one of these decisions, your position seems to demand that all the judges, the ones that are living at least, because some aren't anymore, who've ever been involved in this have to be pulled in individually. It seems to me what you're saying is nobody but the judges themselves, who would come in and deny any find it. But we're also told that we're to be somewhat suspicious of a decision-maker himself or herself who says I wasn't a bad constitutional person. So the way I read the testimony of the gentleman that you're complaining about is that he had a much better picture of what was going on than anybody else. What am I missing? Sure, he wasn't a judge, but he was there for a long period of time and intimately involved. I'm not arguing that the judges had to, that their testimony was absolutely necessary, but I think that the testimony of the person who would be, if you don't need the judges. I mean, nobody would be there. With the testimony, with the evidence from Mr. Coleman and Mr. Tammany, which I believe shows that they did not have a close involvement with the judges' selection. Mr. Tammany testified that his discussions with the judges were not protracted. That the judge may have asked for a recommendation, but if he gave one, it wasn't binding, that it was the judge's call and that he couldn't read the judge's mind as far as what criteria the judge used. In my mind, therefore, you're saying you have to have the judge. If Tammany and Coleman had testified to a much more intensive involvement with the judges. What do you mean by that? I mean, that's very abstract. Where they had actually discussed the criteria that was being used for selecting the foreperson. They seem to be able to tell us what the criteria are. But they never testified that they discussed the criteria with the judge. They testified that they assumed that the judge used the same criteria that they did. So in that, with that void. Did any of the criteria ever come up in any of their involvement with the judges? I'm sorry. Any other criteria ever come up? Any impermissible statements or criteria? Even any stray comments of the kind we usually get in these cases? No. There's no testimony to that. I'm having trouble with your proposition that the testimony of these two people necessarily can never create a foundation. I'm not saying that it can never. But when it does not show a close association with the judge as far as what the judge was actually thinking, then I think there's a void. And the judges could have filled that in. There was also the problem in the three grand juries that were selected after Appellant's motion to quash was denied that two of the four persons were Chinese American and one was Hispanic American. This was strong evidence that there had been prior discriminatory intent. No. It could have been that there was prior lack of affirmative action. Well, Hillary v. Poli holds it or says that it is indicative of prior discriminatory intent. It's indicative. I mean, it's something that you might use as a marker to look for, but it doesn't necessarily establish that there was discrimination. I'm not saying that any one of these by itself establishes the discrimination. But when you look at these three factors together, then the conclusion is that the State court's finding was unreasonable. So by virtue of the fact that the witnesses who actually testified were unable to say definitively, here's the criteria that was being used. Is that right? And then the judges did not testify. If the three had been able to, if Mr. Tammany and Mr. Coleman had been able to testify that we discussed this criteria, we discussed that this person was suitable because this person met this and this standard, then I think that there would be a much stronger case for the State court's findings. But without that information and with the subsequent change in selections and the absence of the judge's input, then I think the result is that the State court's findings are unreasonable. What's the Supreme Court case that talks about four-person selection under these kinds of circumstances? Castaneda is not quite there, is it? I don't think that there's any Supreme Court case. Is that a problem for you? Because the law requires that the prosecution rebut the under Castaneda. The law requires that the prosecution rebut the prima facie case with evidence that there was a non-discriminatory. What was the evidence in the Castaneda case? It seemed that it was the absence of anything. Right. Well, I have an absence of the judges and an absence of a closeness of the court executive and the district attorney to what the judges were thinking. Do I read this record correctly that really the job of a four-person is simply ministerial, that there's no extra clout when it comes to voting on indictments or not? I think in California the job is more than ministerial. In what respect? The four-person leads the discussions, leads the grand jury, decides when they want the DA to bring in evidence, other evidence. And probably more importantly, the four-person decides whether a person should be a grand juror should be dismissed because they're not being impartial. Because they're being impartial, because they're biased. I think that gives the four-person quite a bit of clout, that one particular function. If the four-person can decide who's going to sit and who's not going to sit on the grand jury. Did you want to save some time for rebuttal? Yes. Morning, Your Honor. May it please the court. My name is Mike O'Reilly. I'm a deputy attorney general for the state of California, and I'm representing Warden Carey in this case. I'd like to start out by saying that the state trial court in this case conducted an evidentiary hearing in this matter that lasted 11 days. At the conclusion of that hearing. Well, there were other challenges to the whole grand jury selection process in this case, not just the four-person. It did not include just the four-person, but the state trial judge heard witnesses on this matter in argument for 11 days. 11 days, that little? I mean, I don't know what that means. I saw a 1538.5 go on for nine months. Go ahead. Well, I guess it's all relative, but in the crowded San Francisco Hall of Justice, this was an extensive hearing. Judge Louie heard these witnesses, heard argument, heard statisticians. At the conclusion of the evidence, Judge Louie found that Petitioner had established a prima facie case, that there was racial discrimination in the selection of the San Francisco grand jury over a long period of time. But he also found that the state had successfully rebutted that presumption with evidence that the selection criteria was race neutral. And that was affirmed by the California Court of Appeal, which found substantial evidence. Did he make any findings on what the criteria were that the judges utilized? He found that Judge Louie did not specifically find that the selection process, he didn't make specific findings other than it was race neutral. He didn't say the judges utilized these five factors in selecting it. He did not point that out, but that was clearly in the record. And the Court of Appeal found that the criteria specifically and exclusively focused on the traits and abilities that were directly related to the ability of a grand juror to perform the job as foreman. And although the criteria sufficient to rebut a case of this nature is not specifically defined, but is pretty clear in common sense. And in the case I think most clearly connected with ours factually would be U.S. v. Perez-Hernandez. And there the Eleventh Circuit found that the traits or the attributes of leadership skills, administrative skills in occupation were permissibly race neutral. And that, I would say, was supported by substantial probative and reasonable evidence here. Now, the two fellows that did testify, as counsel pointed out, they didn't testify that they discussed with the judges who should be the juror foreperson. They basically testified as to general observations and factors that they took into account when they were asked who should be the presiding foreman or who should be the foreperson of the grand jury. Well, let me respond this way, Your Honor, if I may. Tammany was a part of that process for 20 years, and he's the assistant court executive officer. Coleman, the DA advisor, was a part of the process for four years. What exactly does it mean that Mr. Tammany had overseen the grand jury process as an assistant executive officer of the Superior Court? Is there anywhere a specification of duties that he has in connection with the grand jury? Is that just something generally falling under his umbrella? I think at that time, or during the relevant time period, it fell under his umbrella. He was involved in, to some extent, in the compiling of the source list, that is the random list of DMV and voter registration. But it appeared from his testimony that he assisted the presiding judge, the assigned grand jury judge, in getting people to court and in organizing the hearing, that sort of thing. But the key part of his testimony that he met with the presiding judge, the grand jury judge, over a period of 20 years in the selection process. My guess really just boils down to whether the prima facie case of discrimination was overcome by the evidence that was adduced at the evidentiary hearing. Yes, Your Honor. And as I read Castaneda, it doesn't approve of or disapprove of any kind of evidence. It simply says that, explicably in this case, none was produced. So then that doesn't say that you have to have this kind or you can't have that kind or you must have all the judges come in who are the decision makers. So is that the way you see the Castaneda case? I see Castaneda. I'm sorry, Your Honor. The question here is whether extrinsically and extrinsically the evidence was sufficient under the standard of review. Well, as I was saying earlier, I mean, well, first of all, your comments earlier, the problem in Castaneda was the State produced no evidence. Right. Here we produced quite a bit. And I would agree that the criteria has never been specifically defined as to what evidence is sufficient to rebut a prima facie case. But under Alexander v. Louisiana, we know that it would be insufficient just to affirm good faith and to deny discrimination. We know that the State must demonstrate that. Because you mistrust the decision makers' protestation. Well, exactly. Exactly. And that's why, I mean, Bookster said that it was a flaw in our case that we didn't present the judges. The most the judges could do was to get up on the witness stand and say, I acted in good faith. I didn't discriminate. Plus, Tammany has a 20-year overview. And no judge except maybe one or two had selected more than one person. We probably – I don't know how many judges were living. Clearly, Judge Fagoni died. But we had probably 30 or more judges involved in this process. The closest thing to a constant were Tammany and Coleman. And their testimony was very, very precise. And if they had wanted the judges, they could have subpoenaed the judges. But they didn't. But Tammany and Coleman, I think their testimony was inherently credible. Well, now, time out. Once they show a prima facie case, then the burden falls entirely on the other side. That's correct. So they don't have to call the judges. They didn't have to, and they didn't. But Tammany and Coleman were inherently credible, because they were the closest thing to a constant in the process. And their testimony tended to corroborate one another. The – they didn't have to defend their own conduct, because they didn't make the selection. They specifically, despite the fact that there were many, many judges, and some of the – there were variables, I'm sure, in the different procedures and methods that judges used. But they testified race was never a factor. They testified that the judges were looking for people with, again, administrative skills, people skills, leadership ability, and some very mundane things like making sure that people showed up on time and the grand jurors did what they were supposed to do. And contrary to Petitioner's argument, they did not testify that this was just my criteria. They testified this was the judges' criteria. And to the extent that Petitioner disputes that point, their position is not supported by the record. Coleman testified specifically that the judges frequently discussed the kind of person they were looking for. The judges had an occupation printout for each grand juror on their desk. Some of these grand jury foremen were picked because of their occupation. The 1993 C officers, that means foreman and secretary, were picked because their skills tended to balance and complement one another. Coleman testified that some of the judges commented that grand jurors who did not show up on time would not make good officers. The judges also had, from the DA, had a criminal history on each grand juror so they could view that. And both Tammany and Coleman said the judge not always but frequently solicited our input. We believed, we assumed that that is why they wanted it because we would look at the grand jurors. We would see them testify in voir dire. We would see how they comported themselves with one another, how they socially interacted, and we would make our recommendations based on that. Sometimes the judge would follow them, sometimes not. But they both testified that race was never a factor. And the district court noted, Judge Breyer noted, also the People v. Brown case, the related case to this one, noted that the fact that the judges usually involved Tammany and Coleman in the process, the very fact that they were in the process means that if any judge harbored any bias, any racial bias, it was less likely that it would go unchallenged because those two people were there. If the court has no other questions, I'm prepared to submit it. No, thank you. Thank you very much, Your Honor. Unless the court has questions, I'll submit it. Okay, thank you. Thank you, Counsel.
judges: Trott, T.G. Nelson, Paez